UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:15-cv-00191-MOC

| | |
|---|---|
| **MAMIE BROOKS,** | ) |
| Plaintiff, | ) |
| Vs. | ) ORDER |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | ) |
| Defendant. | ) |

**THIS MATTER** is before the court upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.  Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits. Plaintiff's claim was denied both initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to plaintiff, from which plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

1

## II. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. A court will "affirm the Social Security Administration's disability determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015) (internal quotation marks omitted). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, ___ F.3d ___, No. 14-2255, 2015 WL 9204335, at *3 (4th Cir. Dec. 17, 2015) (citation and internal quotation marks omitted).

A court is not, however, to "reweigh conflicting evidence[] [or] make credibility determinations" in evaluating whether a decision is supported by substantial evidence; rather, "[w]here conflicting evidence allows reasonable minds to differ," a reviewing court will defer to the Commissioner's decision. Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted). Where it appears that the ALJ has not adequately explained their findings, courts should not engage in an independent review of the facts, but should instead remand to the agency for further investigation or explanation. Radford v. Colvin, 734 F.3d 288, 295 (4th

Cir. 2013). Where an ALJ relies on boilerplate language and does not adequately explain a determination, the decision is "devoid of reasoning," which renders the task of deciding whether the ALJ's decision is supported by substantial evidence impossible. Id. at 295. In sum, it is not appropriate for a court to review the medical record de novo to discover facts to support or refute the ALJ's findings. Id. at 296.

IV.  **Substantial Evidence**

    A.  **Introduction**

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is not.

    B.  **Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

  a.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

  b.    An individual who does not have a "severe impairment" will not be found to be disabled;

  c.    If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

**C.     The Administrative Decision**

The ALJ found at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since March 10, 2012. At step two, the ALJ found that she had the following severe, medically determinable impairments: (1) status post right ulnar nerve decompression; (2) medial epicondylectomy; (3) status post bilateral metatarsalhead resection; and (4) right-hallux exostectomy. At step three, the ALJ found that none of plaintiff's impairments, nor any combination thereof, met or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Before reaching step four, the ALJ determined plaintiff's Residual Functional Capacity ("RFC") and found that she had the RFC to perform medium work, as defined in 20 C.F.R. § 404.1567(c), except that "the claimant can have frequent but not continuous pushing or pulling with the right upper extremity; occasionally climb ladders; frequent but not continuous reaching, handling, and fingering with the right upper extremity. The claimant is right hand dominant."

With such an RFC, the ALJ determined as step four that plaintiff could not perform her past relevant work. The ALJ determined at step five, however, that jobs existed in significant numbers in the national economy that she could perform, resulting in a finding of "not disabled."

**D.     Discussion**

Plaintiff has made a number of assignments of error. In particular, plaintiff claims that: (1) the ALJ improperly discounted the opinion of a treating physician in favor of the opinion of a person who is not an acceptable medical source and completely ignored the medical opinion of another treating doctor who concurred with plaintiff's treating physician; (2) improperly discredited plaintiff's subjective testimony concerning her pain; and (3) and ultimately failed to follow the guidance of the Court of Appeals for the Fourth Circuit in Mascio, infra, a decision which issued after the ALJ rendered what ultimately became the Commissioner's final decision. This court fully agrees with plaintiff.

**1.     First Assignment of Error: Failure to Consider Opinion of Treating Physician and Improper Consideration of an Opinion from Unacceptable Source**

Plaintiff first contends that the ALJ improperly disregarded the opinion of her treating physician as well as another treating physician who concurred in that opinion, and instead considered the opinion of an improper medical source.

Dr. John Gaul was plaintiff's orthopedic surgeon who, after treating plaintiff for an extended period and conducting surgery, opined in August of 2012 that plaintiff was restricted to light work with no lifting over 5 pounds with her right hand. Plaintiff asserts that such opinions were supported by clinical observations and testing.

While conclusions as to whether a person is unable to work are within the exclusive province of the Commissioner and not doctors, Dr. Gaul opinions concerning plaintiff's physical limitations was based on clinical observations of her upper right extremity and objective testing he conducted of plaintiff's grip and pinch strength. Dr. Charles Owensby, another treating physician, joined in Dr. Gaul's assessment concluding that plaintiff was unable to grip small objects with her right hand or fully extend her right arm. Ultimately, the ALJ gave less weight to Dr. Gaul's opinion -- and does not discuss Dr. Owensby's opinion -- relying instead on the opinion of Stephanie Johnson, a nurse practitioner ("NP"), who released plaintiff to return to her former work in August 2012. That same month, Dr. Gaul concluded that plaintiff could only due light work based on limitations in her right upper extremity. The court notes that while the ALJ relied on the opinion of the NP, which included an opinion that plaintiff could return to her past work, the ALJ ultimately determined that plaintiff lacked the RFC to do her past work.

Under 20 C.F.R. § 404.1527, the ALJ erred in giving the opinion of an NP greater weight than that of a treating physician whose medical conclusions were supported by clinical findings. As to failing to consider Dr. Owensby's opinion, the regulations state: "[w]e will evaluate every medical opinion we receive." Id. A treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). The opinion of a treating physician is only entitled to controlling weight if it is supported by "clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2).

> If a physician's opinion is not given controlling weight, then the "factors listed below" and in paragraphs (d)(3) through (5) used to determine the amount of weight to be given it are (1) the length of the treatment relationship and the frequency of examination ("the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion"); (2) the nature and extent of the treatment relationship; (3) supportability ("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"); (4) consistency ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); and (5) specialization ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). Id. The regulation also makes clear, however, that the ultimate determination of disability is reserved for the Commissioner, and "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 416.927(e)(1).

Pittman v. Massanari 141 F.Supp.2d 601, *608 (W.D.N.C. 2001). While acceptable as an "other source" to show the severity of an impairment and how the impairment affects the ability to work, 20 C.F.R. § 404.1513(d), a nurse practitioner is not an acceptable medical source. 20 C.F.R. §§ 404.1502, 416.902, 404.1513(a), 416.913(a).

Remand is required so that the ALJ can evaluate and weigh Dr. Owensby's medical (as opposed to his vocational) opinions as the regulations require. Further, remand is appropriate so that the ALJ may give proper consideration to the opinions of Dr. Gaul, taking into account the treatment relationship, duration and frequency of treatment, specialization, supportability and consistency with other evidence of record. Id. The NP's opinion – if it is considered at all as it is inconsistent with even the ALJ's step four determination – can only be considered as an "other source." While the court agrees with the Commissioner that the deference afforded to medical opinions is not afforded to vocational conclusions by medical providers as they invade the province of the Commissioner, the problem here is that in ignoring the doctors' "disability determinations"

the ALJ also ignored the physicians medical conclusions, which appear to have been based on clinical observations and testing, which is throwing out the baby with the bathwater. This is compounded where, as here, such medical evidence was ignored in favor of a NP opinion that is in conflict even with the ALJ's conclusion at the fourth step.

### 2. Second Assignment of Error: Evaluation of Pain

Plaintiff also contends that the ALJ improperly discredited her subjective testimony concerning her pain. The ALJ found that plaintiff was not credible regarding her pain, weakness and limitations with her right upper extremity finding that she had no localized pain, swelling or stiffness and was able to clean her house and do laundry without help.

The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990)(Hyatt III), which held that " [b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id., at 336. A two-step process for evaluating subjective complaint was developed by the Court of Appeals for the Fourth Circuit in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). This two-step process for evaluating subjective complaints corresponds with the Commissioners relevant rulings and regulations. See 20 C.F.R § 404.1529; SSR 96-7p.[1]

---

[1] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of

Step One requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594.

Step Two requires that the ALJ next evaluate the alleged symptoms' intensity and persistence along with the extent to they limit the claimant's ability to engage in work. Id., at 594; see also 20 C.F.R. § 404. 1529(c); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. Craig, 76 F.3d at 595; 20 C.F.R. § 404. 1529(c); SSR 96-7p. The term "other relevant evidence" includes: a claimant's activities of daily living; the location, duration, frequency and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. Id.

The ALJ's conclusions are not supported by the record. Indeed, there is no doubt that plaintiff had worked her entire adult life, starting at age 19 and not leaving work until the age of 62 at the alleged date of onset. Work history is clearly a factor which must be considered under SSR 96-7p. Further, in considering factors of daily living, the ALJ does not account for evidence that plaintiff received help from her granddaughter in very same daily activities which the ALJ points to in his credibility determination. In addition, plaintiff's difficulties in daily functioning

---

purpose).

are documented by plaintiff's occupational therapist and the ALJ does not explain why such evidence is not corroborative of plaintiff's testimony.

When an ALJ discredits a claimant, the ALJ has a duty to explain the basis for such determination, especially whereas here there is substantial evidence corroborating plaintiff's testimony. In Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989), the Court of Appeals for the Fourth Circuit held that

> it is well settled that: "the ALJ is required to make credibility determinations--and therefore sometimes make negative determinations-- about allegations of pain or other nonexertional disabilities. . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process."

Id., (quoting Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (citations omitted)). Finding such assignment of error meritorious, the court will also remand the matter for the ALJ to properly consider plaintiff's allegations of pain.

### 3. Third Assignment of Error: *Mascio* Error

While the ALJ found that plaintiff suffered from mild limitations in concentration, persistence and pace, plaintiff argues that in determining RFC, the ALJ neither assigned any mental limitations nor did he explain why no limitations were included. This court has previously determined that similar omissions constitute error under Mascio v. Colvin, 780 F.3d 632, 640 (4th Cir. 2015). As this court has previously held,

> [w]hile the court agrees with the Commissioner's argument that the fact that the ALJ found mild limitations in the paragraph B criteria does not necessarily translate to a work-related functional limitation, Mascio clearly imposes on the

> Commissioner a duty to explain why such mild mental health impairments found at step two do not translate into work-related limitations when plaintiff's RFC for work is considered.

Reinhardt v. Colvin, No. 3:14-cv-488-MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015). In Mascio, the Fourth Circuit further held that "[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." 780 F.3d at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir.2013)).

Thus, remand is also appropriate so that the ALJ can either assign limitations based on plaintiff mental impairments or explain why plaintiff's impairments do not rise to a level requiring the assignment of any such limitations.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is not supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Plaintiff's Motion for Summary Judgment will be granted, the Commissioner's Motion for Summary Judgment will be denied, and the decision of the Commissioner will be remanded for further consideration consistent with this decision.

## ORDER

**IT IS, THEREFORE, ORDERED** that

(1) the plaintiff's Motion for Summary Judgment (#9) is **GRANTED**;

(3) the Commissioner's Motion for Summary Judgment (#11) is **DENIED**; and

(4) this action is action is **REMANDED** to the Commissioner for further proceedings consistent with this decision.

Signed: April 14, 2016

Max O. Cogburn Jr
United States District Judge